Our next case for argument is Van Htoi v. Mukasey. Good morning, Your Honors. Good morning. Ina Lipkin for the Petitioner. I know we have two separate issues. One is the government's motion and one is the substantive arguments on appeal. What do you want me to address first? Whichever one you want. Do you want to start with your argument? Sure. Well, this is an appeal from a denial by the Board of Immigration Appeals. And the Board had identified not two arguments as the government contends, but actually three basis upon which it agreed with the IJs in credibility finding. And I'd like to address those three in order. The first is whether the Petitioner testified inconsistently regarding the reason for the denial. The second is whether the Petitioner testified inconsistently regarding the reason her husband was arrested. Now, the Board agreed with the immigration judge in stating that she facilitated and gave three different answers. But if the court looks at the Petitioner's declaration, in fact all those three alleged different answers are contained in the declaration. In the declaration, I think that's Administrative Record, page 188, she states that first her husband got into trouble and was demoted to some form of probation. And then when he did not want to participate in the ordination of three mosques. But didn't she say to begin with that the cause of his imprisonment was that he authorized the building of the churches? Well, Your Honor, that could be... But if you look at the record closely, it's the series of events that led to the imprisonment. In her mind, the first true pivotal reason was his allowing the building of the three churches. And then after they questioned her about this, because there was this little bit of a difference, then she said he refused to worship the Buddhists. Which, again, was different than anything that had happened previously or that she'd said previously. Not that it happened, because I don't know what happened. I'm listening to her. Of course, but I think if you read the record and you compare her testimony with the declaration, you could see that it was a series of events, one on top of each other, that led to his imprisonment. And in her mind, she perhaps thought that the refusal of the building of the three churches was the cause of his imprisonment. His agreement to build the three churches was that first major step that pushed him to be arrested down the line. And in fact, as to that particular issue, it really had nothing to do with political activity, which was the central theme of her argument, wasn't it? Well, there's two different issues here. Issue one is that she and her husband are Christians in a majority Buddhist country. And part of her claim is that because the husband refused to maybe accede to some of these government policies that favor Buddhists, and instead he favored the building of three churches, he was then persecuted himself. And because of her connection to him, we can call that membership in a social group, she too, then, was persecuted, as she later states, the problem she had with the guard at his prison. Well, the problem comes in that it seems to me that there are two or three different roads that she goes. One road doesn't really go with the pro-democracy rally. One road goes into her husband. I don't see that has anything to do with political stuff. It may have had to do with religious stuff, but I didn't see anything in her general application that dealt with religion. It dealt with political and democracy. Let's look at that. The worry that I have is that I have a standard to review here, substantial evidence. She says that she had political problems, and that it's for political activity that we ought to do something for her, and that she's participating in pro-democracy rally. But then when they question her about democracy and political activities and political organizers and all that, she knew nothing. She didn't know about it. She didn't know who organized it. She didn't know why it happened. She didn't know what it was, anything about it. That seems to be, in the IJ's mind, a big deal as to her credibility. Yes, Your Honor. However, she never stated or asserted that she was a member of the pro-democracy rally. She never stated that she was a member of the pro-democracy group. She at all times stated that she attended the rally and participated to sort of represent her employer, because in general, she was in favor of democracy. For example, when later she was fired from her job because she answered three questions in a way that the employer didn't like, her answers sort of show her general grassroots pro-democratic mindset that she was in favor of democracy. She was in favor of a leader who was married to a foreigner and some of the other questions that she answered. So I don't think that just because she herself wasn't that educated in all the tenets of that particular party, if any, but that she just had a general pro-democratic stance that the government then imputed onto her a political opinion, perhaps greater than she held. I have a question about the husband. Maybe I read it a little differently than Judge Smith, but I thought that the finding there was that the I.J. thought she was inconsistent about what happened to the husband, but that she herself wasn't basing her claim for asylum on that. It was based on her, what happened to her and her political situation, but she was explaining what had happened to her husband. Am I incorrect about that? You know, I would amend that a little bit, because at the end she clearly stated that because she then became within the sights of that guard who raped her and became a known person to this government official, she then feared that if she had any further activities in visiting her husband and then perhaps encountering that official, perhaps then her prior arrest would come to light and the police or government interest in her would be then renewed. So this sort of tangential prong then becomes apparent. I wanted to address one thing about the rapes, if I may. Well, I was going to say my worry is about this. I'm pretty confident of my understanding that we shouldn't be suggesting that her failure to disclose the rapes should be used against her on credibility. That seems to be our law, and I'll seem to go with that. My worry is that in this particular instance, I have a problem with her husband's imprisonment and what was said and why and on what activity. I have a problem with her general view of political activity. And then it seems as if the IJ is suggesting and the BIA then affirming that no claim of physical abuse on the application should be used against her. When the physical abuse is a dramatic, pivotal account, that that is another basis for the same incredible determination. Now, my worry is I can go with our case law. I can say that this is the way it is. But if I talk about what happened with her husband and I talk about what happened with her knowledge of democracy and political activities, I don't even have to go back to that. I don't even have to get to the claim of physical abuse or the failure to list it or the failure to talk about it. And I can still, I still, based on a substantial evidence review, have to find her incredible. That's my worry. Can you address that? Yes, Your Honor. As I stated earlier, that it seems that the IJ based her incredibility finding on a cumulative basis. She didn't assign greater weight, per se, to alleged inconsistencies regarding the reasons for the husband's arrest than to the rape or the lack of the omissions in the declaration. So therefore, the court needs to, I think, address all the petitioner's arguments regarding that. Are you suggesting that there is another one, the omissions from the application does not directly attach to the rape problem? Well, there's this separate, there's two omissions. One, the way she was beaten, and two, the fact she was raped. Now, one of the things that the judge clings to is that she allegedly said or did not say something to the asylum officer. There is nothing in this record to prove and substantiate that she, in fact, did not tell the asylum officer she was beaten. The asylum officer's notes were not introduced. So perhaps... Doesn't it come down to this? It's a pre-Real ID Act case. Any single inconsistency that goes to the heart of her case is sufficient to support a finding of lack of credibility. So that's really the question, and maybe a different way of asking what Judge Smith said. If you throw out the rape problem, which seems to be contrary to our Ninth Circuit law, are the other grounds for inconsistency? Do any of those go to the heart of her claim? And if they do, and there's substantial evidence, then even under our old law, she wouldn't be able to sustain her claim, would she? I agree with you. However, based on my prior arguments, I'm not going to reiterate them. If you look at what she actually said compared to her declaration, and the way in which she answered, especially about the reasons for her husband's arrest, she was giving the many reasons why she felt he ultimately was arrested. It wasn't just because he didn't want to attend the ordination of the monks. It wasn't just because he allowed the building of the three churches. Altogether, these factors led to his arrest, as was written in the declaration. Why don't you save your remaining zero seconds? We're going to give you a minute for rebuttal. Good morning. Ayla Dice, Assistant U.S. Attorney for the Respondent Attorney General. Substantial evidence supports the agency's adverse credibility determination, and as Judge McEwen pointed out, so long as one of the grounds goes to the heart of the asylum claim, the court is bound to accept this determination. And nothing in the record compels a different conclusion. Here, the BIA, as Judge McEwen pointed out, putting the rapes aside completely, and just looking at the petitioner's asylum application, the BIA found in its order that the petitioner failed to mention any mistreatment whatsoever. Page 182 of the administrative record is the declaration in which there is a one-sentence reference to being arrested in 1988 during the petition. There is no mention of any famous August 8, 1988 democracy protests, and then an eventual firing, but there is absolutely no mention of any physical mistreatment whatsoever in her application. There is later some differing testimony as to whether that was mentioned to her asylum officer. That alone goes to the heart of her asylum claim in totality, and is enough to affirm the adverse credibility determination. Then there are the other grounds that Judge Smith pointed out as well, the shifting explanation of the husband's whereabouts and why he was in prison. You know, that's, read in fairness, I think those are two descriptions of two separate things. I don't find those at all inconsistent, so I was having trouble understanding the IJ's rationale, to be honest. Maybe you can enlighten me, but I read the testimony, and then I read the conclusion, and it seemed like they're not, well, one, they're not inconsistent, and two, they're two separate things. Yeah, the situation with his church building, and then the situation with his not helping out the Buddhists. It appears that at first, and the BIA does give reference citations to the hearing on this matter, first, she said, she says that her husband was arrested because he permitted the building of three churches, and then later said that he was arrested because he wouldn't worship three Buddhist monks, which the IJ found was implausible, because the Buddhist monks were also subject to the alleged persecution of military government at the time, and didn't find that a plausible explanation. In any event, I know that the petitioner has argued that the inconsistency with the husband's whereabouts is somewhat, does not go to the heart of the asylum claim, but if you look at the, because it's her husband's persecution, or it's her husband's treatment while he's been in prison, but if you look at her asylum application, the gravamen of the application is based on her husband's treatment, and then sort of an assumed, perhaps imputed. Nobody denies that he was in prison, is that correct? That's correct. And she may not know for sure why he's there. It could be one of those reasons, both of those reasons. I don't see any inconsistency in that part of the testimony. Again, Your Honor, if the court doesn't find inconsistency there, there is still the severe material omission of any mistreatment whatsoever on her asylum application, which would be enough to uphold the adverse credibility. I think we always have a problem with incomplete asylum applications. They're done by people who are not professionals. They don't understand what's really critical. I read this whole transcript, and I read it twice, and it seemed to me that she was unusually consistent and articulate throughout that transcript. So I find it difficult to find that she could be considered to be incredible. So I just wanted to let you know that. There are other things, if you do read, Your Honor has read the transcript several times, there are things that come out in the transcript hearing that are not specifically listed by the IJ, other problems that she saw with her credibility. Again, she's looking at it in the overall context of her testimony. Nobody denies that they made her write Democracy II, she couldn't write anymore, and then fastened it around her neck. You don't make things like that up. Again, that was completely omitted from her asylum application, any mention of the 1988 beatings, any mention of having to write Democracy multiple times was omitted. Well, if we concede that the asylum application is incomplete, then for whatever reason, is she foreclosed from elaborating and telling the truth? The case law, Lee v. Aliev Ashcroft, has made it clear that an omission that great, specifically the mistreatment that is the basis for her asylum application, omitting that in the asylum application, which does include a very detailed, free-paged, single-space declaration that is very articulate. This is an educated petitioner, that that omission is material enough and goes to the heart of the asylum claim and would be sufficient to uphold the adverse credibility determination. If we were to determine that because it's pre-Real ID Act and for a variety of reasons there isn't substantial evidence to support these adverse credibility findings, this gets remanded to the board? If the panel does not find that the adverse credibility determination is supported by the evidence, which the government obviously believes it is, then the government's motion comes into effect. And I can address that now, I still have time, quickly. What we were trying to do is recognize that this was briefed in 2005, no reply brief was filed, and since then the intervening case law has made it clear that the court is reviewing not only the BIA case law, but also other cases. Not only the BIA's decision, the adverse credibility determination, but also the IJ's decision and the IJ's alternate decision, which is the specifically addressing the 2002 incidents, that the mistreatment by the prison official, prison guard in 2002 did not rise to the level of persecution. Now, neither petitioner, petitioner didn't challenge that, so arguably it stands. But the government as well briefed this case in a manner only addressing the BIA's decision, and so the government was trying to give an opportunity to the BIA to clarify exactly was it ruling on just the adverse credibility determination or was it also affirming the alternate grounds that the IJ had. And even if the BIA was also affirming the alternative grounds, we just are at the point, aren't we, in this application where one might have established past persecution and therefore have a presumption of future persecution, and then the government has a chance to bring in alternative country conditions, and that hasn't happened yet. And one other thing that's a little bit curious about this case is that the IJ in the alternate decision does address square on the 2002 rape and mistreatment, but just states that there was an incident in 1988, which was 15 years prior, and doesn't really go into whether that rises to the level of persecution, sort of leaves it there and doesn't discuss the fact that she... And so I'm just wondering if you're saying that the Verbano decision by the BIA, it kind of sweeps in everything, and it would appear to sweep in this decision on, its decision on no past persecution from the IJ, but just so I can be clear about your position, are you saying that if the credibility finding is not sustained, that the record is murky enough that it should just go back to the BIA in general? And without any specifics other than that the credibility finding can't be sustained? I mean, would that be the effect of granting the government's motion? Yes. Thank you. You may have a minute of rebuttal. Thank you. I just wanted to address two points. First, this application was not prepared by an attorney, and there's nothing on page 9 of the asylum application to indicate that an attorney had prepared it. Secondly, again, we don't know what she said at the asylum office, and had she discussed in detail the beating in the same manner that she discussed it before the immigration court, I don't think that that would have been the case. Third, I believe the IJ engaged in improper speculation and conjecture to find that it is improbable or impossible or implausible that the petitioner's husband would have been arrested because he didn't want to participate in the ordination of three monks. Because she never explained why that's implausible or improbable. The government attorney just now had offered an explanation, but that's not in the record. But, in fact, and this is the tough part of this, in fact, that plausible explanation was her explanation of former inconsistencies, which then the government was giving her a chance to explain, where she went even to a different thing. And that was totally unexplainable because it had no correlation with what the two inconsistencies were. Isn't that the way it happened? Well, the fact is, Your Honor, which the way she explained it completely mirrored what was written in her declaration. Because in her declaration it says that first he built the churches, he got demoted, then he didn't participate in the ordination of three monks, then they arrested him. And that the two presumably went together, that the level of punishment was a reflection of the many incidents that the husband allegedly participated in. And the IJ's statement that it was implausible, I read it to understand that it was implausible that he would have been arrested because he didn't want to participate in the ordination of the monks, and she never explained why that would be implausible. Thank you. Thank you. My thanks to both counsel this morning. Bontoy v. Mukasey is submitted.
judges: Fletcher, McKeown, Smith